OPINION
{¶ 1} Norbert M. Doellman, pro se, appeals from a judgment of the Butler County Court of Common Pleas in favor of First National Bank of Southwestern Ohio nka First Financial Bank N.A. ("FNB") on its claims and on Doellman's counterclaims, in the amount of $279,292.
 {¶ 2} This is Doellman's second appeal of this action to this court. We set forth the procedural history of this case in our first opinion, and we repeat it herein.
 {¶ 3} According to FNB's complaint, Doellman performed collection-related legal services for FNB for approximately 20 years. Doellman handled these collection matters on a contingency basis. During the last few years of Doellman's relationship with FNB, he turned over between $2,000 and $7,000 in collections per month to the bank. In March 2001, FNB terminated Doellman as one of its attorneys and hired new counsel. At the time of his termination, Doellman held over 150 of FNB's collection files. Despite repeated requests, Doellman failed to return those files, to provide an accounting of his collection activities, and to turn over all funds received on behalf of FNB.
 {¶ 4} Consequently, on June 22, 2001, FNB filed an action against Doellman, alleging breach of contract, unjust enrichment, conversion and an action for replevin. Doellman denied the allegations and brought counterclaims of tortious interference with contract and tortious repossession of his van. After setting forth his counterclaims, Doellman stated "Counter Claimant hereby demands trial by jury."
 {¶ 5} On September 26, 2001, FNB requested discovery from Doellman. That request was renewed on November 21 after Doellman claimed that he had not received the initial request. Although Doellman provided several income tax returns and collection files to FNB, he did not supply a substantial portion of the requested information. In 2002, Doellman filed a motion for a protective order, claiming that the discovery requests were overly burdensome. FNB responded with a motion to compel discovery. After a hearing on the motions, which Doellman did not attend, the court granted the motion to compel discovery and overruled Doellman's motion for a protective order.
 {¶ 6} After Doellman failed to comply fully with the court's discovery order, FNB sought sanctions against Doellman. Doellman did not file a response to the motion. A hearing on the motion was scheduled for June 6, 2002. Doellman states that he did not learn of the hearing until the morning of June 6, when he called his office answering machine from a hospital. Doellman did not attend the hearing. He later asserted that he had spoken to the court's bailiff on the morning of the hearing while he was at the hospital with his parents due to a medical emergency, and that he had been told that he need not come. After the hearing, the trial court ordered Doellman to turn over FNB's files and other requested documents within two days, entered judgment against Doellman and in favor of FNB on the issue of liability, dismissed Doellman's counterclaims, and ordered Doellman to pay FNB's costs and attorney fees related to the motion for sanctions. When Doellman failed to turn over the files within the prescribed time period, the trial court granted FNB's motion for access to his property to retrieve the files.
 {¶ 7} On July 12, 2002, FNB filed a notice that it would be taking Doellman's deposition on July 30, 2002. On the same day, Doellman sought a continuance in the case, indicating that he was no longer capable of representing himself due to major depression. He indicated that he had found counsel to represent him but that his new counsel would not be available during much of July. The trial court did not rule on Doellman's motion for a continuance. Doellman apparently did not appear for his deposition.
 {¶ 8} In January 2003, Doellman filed an affidavit of bias, claiming that the trial judge was biased against him. On January 24, the trial judge recused himself, and the case was transferred to another common pleas judge. The recusal order expressly stated that the February 3, 2003, trial date was not vacated. Accordingly, a trial was held on February 3, 2003, as scheduled. Doellman was not present. On February 11, 2003, the court entered judgment against Doellman in the amount of $279,292 and ordered him to provide an accounting to FNB, to turn over FNB's files and other requested documents, and to pay FNB's costs and attorney fees.
 {¶ 9} The record reveals that Doellman retained counsel for several months during 2003, during which the parties attempted to negotiate a settlement. Apparently, no settlement was reached. On February 9, 2004, Doellman sought to disqualify the trial judge, again claiming that the judge was biased and that the case should be reassigned. The supreme court overruled the motion for disqualification. Doellman subsequently sought relief from the June 6, 2002, order and the February 11, 2003, judgment, pursuant to Civ.R. 60(B). That motion was denied on May 10, 2004.
 {¶ 10} Doellman appealed the denial of his Civ.R. 60(B) motion. On February 22, 2005, we affirmed the trial court's decision, reasoning that Doellman had failed to set forth a potentially meritorious defense to FNB's claims and that the trial court did not abuse its discretion in failing to conduct a hearing on the motion. First National Bank of SW Ohio v.Doellman, Butler App. No. CA2004-06-134, 2005-Ohio-679
("Doellman I"). We further rejected Doellman's challenges to aspects of the June 6, 2002 hearing and the February 3, 2003 trial. We stated that those arguments should have been raised in a direct appeal and that Civ.R. 60(B) cannot be used as a substitute for a direct appeal. We noted, however, that the record suggested that Doellman had not been served by the clerk with several of the trial court's entries, including the February 11, 2003 final judgment. Accordingly, we further stated that "if, as the record suggests, Doellman did not receive service of the February 11, 2003 final judgment and the date of its entry on the journal in accordance with Civ.R. 58(B), his time to appeal that ruling has never begun to run."
 {¶ 11} After remand, Doellman requested that the clerk of courts serve him with a notice of the February 11, 2003 judgment. The court granted that request on April 27, 2005, and Doellman was served on May 2, 2005. Doellman has filed a timely appeal, raising nine assignments of error.[1] We address Doellman's assignments in an order that facilitates our analysis.
 {¶ 12} "VIII. JUDGE SAGE ERRED IN PROCEEDING WITH THE JUNE 6, 2002 HEARING AFTER HIS BAILIFF TOLD ME NOT TO ATTEND THIS HEARING."
 {¶ 13} In his eighth assignment of error, Doellman asserts that the trial court erroneously proceeded with the June 6, 2002 hearing in his absence when he was granted permission by the court's bailiff not to attend.
 {¶ 14} Doellman first asserted that he did not attend the June 6 hearing due to statements by the bailiff in his affidavit of bias, which was filed on January 21, 2003.[2] According to that affidavit, early in the morning on June 6, 2002, his father was taken to the hospital and required surgery. While at the hospital, Doellman heard a message from the court on his office answering machine, which indicated that the time of the June 6 hearing had been changed. Doellman stated that this "was the first that I knew about this hearing."[3] Doellman then called the trial judge's chambers and spoke with the bailiff. Doellman explained the situation about his father and that he had just learned of the hearing. According to Doellman, the bailiff replied: "No, don't you worry about this, Norb. You just stay there with your family." In essence, Doellman orally requested a continuance of the hearing, and he believed that it had been granted.[4]
 {¶ 15} Initially, we note that a bailiff has no judicial authority and can neither grant a request for a continuance nor excuse a party's absence from a hearing. Moreover, it is well-established that a court speaks only through its journal, and not through oral pronouncements. Schenley v. Kauth (1953),160 Ohio St. 109, paragraph one of the syllabus.
 {¶ 16} We recognize, however, that bailiffs are conduits between attorneys and judges and, in that capacity, bailiffs relay information to attorneys on any number of issues. Furthermore, attorneys will often rely upon the representations of a bailiff that a matter will be rescheduled or that an attorney need not appear. Because of the close relationship that bailiffs and judges share and the resulting ability of many bailiffs to anticipate their judge's rulings, that reliance is not unreasonable.
 {¶ 17} The Eighth District has recognized that when a court's bailiff has informed an attorney that he need not appear for a hearing, the absent party's right to due process is violated when the court conducts an ex parte hearing in that party's absence.Pete's Auto Sales v. Conner (Aug. 24, 2000), Cuyahoga App. No. 77014 (the defendant did not receive minimum due process when the court entered judgment against him after the court's bailiff had told him to leave because a large criminal trial was still in progress); Apel v. Katz (Apr. 29, 1993), Cuyahoga App. No. 63084 (conducting an ex parte hearing violated due process when the plaintiffs had been told by the court's bailiff that no visiting judge would be available to hear the case and that they would be contacted when one was available, and when the hearing proceeded without plaintiffs being notified that the visiting judge had become available and the visiting judge was informed that plaintiffs' counsel had refused to appear). "Due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I, Ohio Constitution, requires that every party to an action be afforded `a reasonable opportunity to be heard after a reasonable notice of such hearing.'" Zashin, Rich, Sutula Monastra Co., L.P.A. v.Offenberg (1993), 90 Ohio App.3d 436, 443, quoting Ohio ValleyRadiology Assoc., Inc. v. Ohio Valley Hosp. Assn. (1986),28 Ohio St.3d 118, 125.
 {¶ 18} Upon review of the record, Doellman's sworn account of his conversation with the court's bailiff is uncontested. Although FNB asserts that "surely Mr. Doellman could have had the bailiff admit the mistake in an affidavit" if this had happened, Doellman was under no obligation to obtain corroborating evidence. Moreover, although the court could have elected to hold a hearing on this issue in response to Doellman's Civ.R. 60(B) motion, it was not obligated to do so in the absence of contradictory evidence. Because the uncontroverted evidence in the record indicates that Doellman failed to attend the June 6, 2002, hearing based on a representation of the court's bailiff that he need not attend, the court should not have proceeded with the ex parte hearing.
 {¶ 19} The eighth assignment of error is sustained.
 {¶ 20} "JUDGE SAGE ERRED IN ENTERING JUDGMENT AGAINST ME ON JUNE 6, 2002 ON THE COMPLAINT AND ON MY COUNTERCLAIMS AS A DISCOVERY SANCTION."
 {¶ 21} In his ninth assignment of error, Doellman claims that the trial court erred when it dismissed his counterclaims and entered judgment in favor of FNB on its claims as a discovery sanction.
 {¶ 22} "A trial court's authority to sanction a party for failure to obey discovery orders is governed by Civ.R. 37(B)(2) which provides in relevant part that `[i]f any party * * * fails to obey an order to provide or permit discovery * * *, the court in which the action is pending may make such orders in regard to the failure as are just, [including] an order * * * dismissing the action or proceeding * * *, or rendering a judgment by default against the disobedient party.' Civ.R. 37(B)(2)(c). Dismissals and default judgments are the most severe sanction for failure to comply with a discovery order." Producers CreditCorp. v. Voge, Preble App. No. CA2002-06-009, 2003-Ohio-1067, ¶ 14.
 {¶ 23} The supreme court has held that the notice requirement of Civ.R. 41(B)(1), which requires a trial court to give notice to counsel before dismissing an action, "applies to all
dismissals with prejudice, including those entered pursuant to Civ.R. 37(B)(2)(c) for failure to comply with discovery orders."Voge at ¶ 15, quoting Ohio Furniture Co. v. Mindala (1986),22 Ohio St.3d 99, 101. (Emphasis sic.) "The purpose of notice is to give the party who is in jeopardy of having his or her action or claim dismissed one last chance to comply with the order or to explain the default." Sazima v. Chalko, 86 Ohio St.3d 151, 155, 1999-Ohio-92. The notice requirement of Civ.R. 41(B)(1) is satisfied "when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal." Quonset Hut, Inc. v. Ford Motor Co. (1997),80 Ohio St.3d 46. "Pursuant to Sazima and Quonset Hut,
implied notice of a trial court's intention to dismiss exists when a party is on notice that the opposing party has requested dismissal." Voge at ¶ 19.
 {¶ 24} Here, the pretrial statement portion of the January 16, 2002 scheduling order stated the failure "to submit the pretrial statement or comply with any other court order in a timely manner may result in the imposition of appropriate sanctions, including, but not limited to, dismissal of the case or contempt of court." On April 22, 2002, the court granted FNB's motion to compel discovery and ordered Doellman to produce immediately the requested documents, including all client files, and to respond to FNB's written discovery requests that had been served by FNB. The April 22 order did not indicate that sanctions, including dismissal of Doellman's counterclaim and judgment in favor of FNB, could result from a failure to comply. However, on May 15, 2002, FNB filed a motion for sanctions, indicating that Doellman had returned only 20 additional files since the April 22 order and that he had not served any answers to interrogatories nor produced any other documents that FNB had requested. FNB requested judgment in its favor and the dismissal of Doellman's counterclaims. Because FNB's motion for sanctions specifically requested dismissal of Doellman's counterclaims and judgment in its favor, Doellman was placed on notice that such sanctions could be imposed if he failed to comply with court's April 22, 2002 order.
 {¶ 25} Although the court must hold a new sanctions hearing in light of our disposition of Doellman's eighth assignment of error, the court may again dismiss Doellman's counterclaims and enter judgment in FNB's favor if it deems those sanctions to be appropriate.
 {¶ 26} The ninth assignment of error is overruled.
 {¶ 27} "JUDGE PATER ERRED IN CONDUCTING THE TRIAL ONLY DAYS AFTER THE RECUSAL OF JUDGE SAGE."
 {¶ 28} In his third assignment of error, Doellman argues that the trial court should not have conducted the damages trial on February 3, 2003. Doellman claims that the trial judge was not sufficiently familiar with the case to conduct the hearing. The original trial judge had recused himself on January 24, 2003.
 {¶ 29} Upon review of the record, including the transcript of the February 3, 2003, trial, we find nothing to suggest that Judge Pater was inadequately prepared.
 {¶ 30} The third assignment of error is overruled.
 {¶ 31} "JUDGE PATER ERRED BY DISMISSING THE DEMANDED JURY AND DECIDING THE DAMAGES HIMSELF AGAINST A PARTY NOT IN DEFAULT."
 {¶ 32} In his sixth assignment of error, Doellman asserts that the trial court erred by failing to have a jury trial on February 3, 2003.
 {¶ 33} At the beginning of the trial, the court noted that it did not have a jury and that the court had not requested the clerk to provide prospective jurors. The court explained that Doellman had made a jury demand in his capacity as a counter-claimant but not as a defendant. The court indicated that, because Doellman's counterclaim had been resolved and FNB had waived its jury demand, no jury had been required. Upon review of the answer and counterclaim, it appears — as concluded by the trial court — that Doellman only demanded a jury for his counterclaims and did not include such a demand for all claims.
 {¶ 34} Regardless, Civ.R. 39 is dispositive of this issue. Civ.R. 39(A) provides, in pertinent part: "The failure of a party or his attorney of record either to answer or appear for trial constitutes a waiver of trial by jury by such party and authorizes submission of all issues to the court." Because Doellman did not appear for the February 3 trial (of which he had notice),[5] Doellman waived his right to a jury trial on damages. Moreover, because FNB stipulated that it was waiving its jury demand, the court did not err in conducting a bench trial.
 {¶ 35} The sixth assignment of error is overruled.
 {¶ 36} "THE BANK'S ONLY WITNESS WAS NOT QUALIFIED AS AN EXPERT."
 {¶ 37} "THE BANK'S ONLY WITNESS DID NOT GIVE EXPERT TESTIMONY."
 {¶ 38} "TRIAL JUDGE [ERRED IN] AWARDING JUDGEMENT BASED UPON FABRICATED ESTIMATES OF DAMAGES."
 {¶ 39} In his first, second, and seventh assignments of error, Doellman claims that the court improperly accepted the testimony of James Deller, FNB's vice president of collections, in awarding damages to FNB. FNB responds that Doellman failed to attend the damages trial and has thus waived any objection to Deller's testimony. We agree. Having failed to attend the trial, Doellman has waived all but plain error. No plain error is demonstrated.
 {¶ 40} The first, second, and seventh assignments of error are overruled.
 {¶ 41} "JUDGE PATER ERRED BY REFUSING TO CONDUCT THE REQUESTED ORAL HEARING FOR PRESENTATION OF TESTIMONY AND EVIDENCE IN SUPPORT OF RELIEF FROM JUDGMENT."
 {¶ 42} "JUDGE PATER ERRED IN DENYING RELIEF FROM JUDGMENT."
 {¶ 43} In his fourth and fifth assignments of error, Doellman challenges the trial court's rulings on his motion for relief from judgment. In his fourth assignment of error, he claims that the trial court erred in failing to hold an evidentiary hearing on his motion. In his fifth assignment of error, Doellman claims that the trial court erroneously denied his motion for relief from judgment. Both of these issues were addressed and rejected in Doellman's first appeal. Doellman I at ¶ 12-20.
 {¶ 44} The fourth and fifth assignments of error are overruled.
 {¶ 45} The judgment of the trial court will be reversed and the case will be remanded for further proceedings. On remand, the trial court must conduct a new hearing on FNB's motion for sanctions arising out of Doellman's alleged failures to comply with the court's discovery orders. Nothing in this opinion precludes the trial court from again dismissing Doellman's counterclaims and entering judgment in favor of FNB on its claims if the court finds that such sanctions are appropriate. Because Doellman received notice of the February 3, 2003 trial and failed to appear at his peril, the court need not revisit the issue of FNB's damages should it ultimately be determined that Doellman is liable to FNB on its claims.
Brogan, J., and Fain, J., concur.
[1] Because Doellman's stated assignments of error do not match the headings used in the argument section of his brief, we have chosen to quote the more artfully crafted headings.
[2] Doellman also attached the affidavit of bias to his Civ.R. 60(B) motion.
[3] We note that, despite Doellman's assertion that he did not know of the June 6 hearing until he heard the court's telephone message on the morning of the hearing, Doellman did not raise a lack of notice in his assignment of error. Even if the issue had been raised, the record indicates that the court sent him a notice of the June 6, 2002 hearing on May 20, 2002.
[4] Parenthetically, we note that Civ.R. 7(B)(1) requires an application to the court for an order to be made "by motion which, unless made during a hearing or a trial, shall be made in writing." Butler Cty. Local Rule 3.11 also provides: "Counsel shall not initiate or institute any discussion on a pending case with the trial judge unless all counsel are present, or have been reasonably requested or notified to be present at a specific time fixed by the court." Doellman's oral request for a continuance of the June 6 hearing did not meet these requirements. Accordingly, had the trial court expressly denied Doellman's oral request on the morning of the hearing, the court would not have abused its discretion when it denied a motion that was not properly filed. See Fields v. Stange, Franklin App. No. 03AP-48,2004-Ohio-1134, ¶ 10-13.
[5] A scheduling order, which indicated a February 2, 2003 trial date, was sent to Doellman's counsel, Michael Strong, on September 2, 2002. Moreover, on December 27, 2002, Doellman was sent a notice that the pretrial conference, which had been scheduled for January 20, 2003, would be held on January 21, 2003. Thus, the record reflects that Doellman received notice of the February 2, 2003 trial date.